UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LELA TOMPKINS,

        Plaintiff,                       Case No. 10-10413
                                              HON. BERNARD A. FRIEDMAN

vs.

CROWN CORR, INC., et al.,

        Defendants.
_____/

## OPINION AND ORDER

**I.    Introduction**

        This matter is before the Court on Defendant Crown Corr, Inc.'s ("Crown Corr") motion for summary judgment. Defendant Hunt Construction Group, Inc. ("Hunt") joined in Crown Corr's motion, and together they are referred to as "Defendants." Defendants seek summary judgment on Plaintiff's claims as well as the cross-claims of Northwest Airlines ("Northwest") and Wayne County Airport Authority d/b/a Detroit Metropolitan Airport ("Detroit Metro") (together "Cross-Plaintiffs"). Plaintiff and Cross-Plaintiffs filed responses, and Crown Corr filed a reply. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court will decide this motion without oral argument.

**II.    Procedural History**

        On December 22, 2008, Plaintiff Lela Tompkins filed her original complaint in Wayne Detroit Metro, Northwest and Kimco Corporation ("Kimco") as defendants. Her complaint contained claims regarding a December 29, 2005 slip-and-fall as a result of a purported water

1

leak from the roof of Detroit Metro.  On February 19, 2009, Detroit Metro and Northwest filed a third-party complaint against Hunt and Crown Corr.

After filing its answer on April 6, 2009, Crown Corr filed a motion for summary disposition in the state court arguing that pursuant to Michigan's statute of repose, MCL § 600.5839, claims against Crown Corr and Hunt must be dismissed.  The statute of repose states that no person may maintain any action to recover damages for any bodily injury arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained as a result of such injury against any contractor making the improvement more than six years after the time of occupancy of the completed improvement, use or acceptance of improvement.

Following the filing of response and reply briefs and oral argument, Judge Baxter of the Wayne County Circuit Court entered an order granting Crown Corr's motion for summary disposition and dismissed the third-party complaint against Crown Corr and Hunt with prejudice. The dismissal was not appealed.

Thereafter, following a motion by Northwest and Detroit Metro, Judge Baxter granted leave to file notices of non-party fault identifying Crown Corr and Hunt as potentially responsible parties.  On September 28, 2009, Northwest and Detroit Metro served their notices of non-party fault identifying Crown Corr and Hunt as potentially responsible parties.  On December 10, 2009, following a motion for leave to file an amended complaint, the court entered an order granting said relief.  Plaintiff then filed her amended complaint naming Crown Corr and Hunt as defendants.

Crown Corr was served with Plaintiff's First Amended Complaint on January 7, 2010,

and on January 29, 2010 Crown Corr removed this action to this Court, and filed its responsive pleadings. The Cross-Plaintiffs then filed their cross-complaint against Crown Corr and Hunt. Thereafter, Crown Corr filed the instant motion, to which Hunt filed a concurrence.

**III.     Standard of Review**

Summary judgment is proper where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. In considering a motion for summary judgment, the Court will construe all facts in a light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). There are no genuine issues of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Id. If the movant carries its burden of showing an absence of evidence to support a claim, then the nonmovant must demonstrate by affidavits, depositions, answers to interrogatories, and admissions that a genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 324-325 (1986).

**IV.     Facts**

    **A.     Complaint**

Plaintiff's complaint regards a slip-and-fall accident that she suffered as a result of a purported water leak from the roof of the Midfield Terminal of Detroit Metro. She alleges that Defendants had a duty to design, build, repair and maintain and keep the premises in a reasonably safe condition and to protect and/or warn Plaintiff of any existing dangers. Dft. Exh. 9. Plaintiff further alleges that Defendants allowed a dangerous condition to exist on the premises, and that they owed a duty of care to Plaintiff to use reasonable care in the design, building, maintenance, repair and management of the premises. Count IV of Plaintiff's

complaint asserts a negligence claim against Hunt, and Count V of Plaintiff's complaint asserts a negligence claim against Crown Corr.

Defendants contend that the language and allegations of the cross-complaint are virtually identical to that of the third-party complaint filed in Wayne County Circuit Court, which was dismissed by Judge Baxter following Defendants' motion for summary disposition in that Court. They further argue that Plaintiff's claims against them should be dismissed for the same reasons as the cross-claims, namely the controlling effect of Judge Baxter's opinion.

### B.  Contract Work History

Huber, Hunt and Nichols, Inc., a subsidiary of Hunt, contracted with Northwest to construct the Midfield Terminal Building.  Crown Corr contracted with Hubert, Hunt and Nichols, Inc., to provide certain subcontracting work, including construction of the metal roof for the terminal.  The work on the project was substantially completed on or before February 24, 2002, the final warranty for the metal roof began running on February 24, 2002 and the airport opened for use on that date.

### C.  Roof Leaks

After the opening of the Midfield Terminal, Crown Corr received warranty requests, including some for reports of leaks associated with the roof.  Crown Corr states that leaks were not unexpected given the size of the roof, which extended over a million square feet.

Crown Corr states that a leak was reported in the general area of Plaintiff's fall on February 20, 2003, and was repaired on February 26, 2003.  Crown Corr further states that on February 3, 2004, there was a Johnson Controls work order referencing a leak at the Center Tram and stating that Crown Corr was to come in on February 21, 2004.  In addition, on March 11,

2004, Johnson Controls discovered a leak somewhere around one of the three trams, and a Crown Corr employee was escorted to the roof to check for a leak.  Further, Johnson Controls discovered a leak at the south side of the Center Tram Station on November 15 and 29, 2005.  Crown Corr states that it never got notice of this water issue, and further states that Northwest has admitted that many times if there was a leak, Johnson Controls would monitor the leak without reporting it to Crown Corr.

Plaintiff, in response, states that Crown Corr was often working on other areas of the airport, and would be contacted directly to repair leaks without a work order being generated.  Plaintiff's summary of the work done to repair the leaks is lengthy.  Plaintiff notes that Midfield Terminal opened in February 2002 and, according to Plaintiff, Work Orders and Incident Warranty Reports regarding roof leaks were made on May 12, 2002, February 20, 2003, February 3, 2004, March 11, 2004 and November 15, 2005.  Further, Plaintiff's response brief argues that there is documentary evidence that reports of the leaks persisted throughout the years, including on dates when there was not a Work Order or Incident Warranty Report generated.  Pltf. Resp. p. 5-9.

**V.     Analysis**

Cross-Plaintiffs state that their cross claim against Crown Corr is premised upon the alleged negligence of Crown Corr in its failure to properly repair the roof of the terminal area where Plaintiff fell.

Defendants offer multiple arguments in support of their motions.  Defendants contend that Plaintiff's premises liability claims fail since Defendants did not own, control or possess Detroit Metro; that Plaintiff's negligence claims fail because Defendants' obligations arise out of

a contract; and that Cross-Plaintiffs' cross-claim and Plaintiff's claims are barred by res judicata.

### A. Premises Liability

Defendants first argue that Plaintiff's premises liability claims fail as a matter of law since Defendants did not own, control or possess the terminal. In response, Plaintiff states that she is not asserting a premises liability claim against Defendants, and Plaintiff's claims against Defendants relate to the negligent repairs made to the roof above the main tram station that created an unreasonable risk of injury inside the building.

### B. Res Judicata

Defendants also argue that Plaintiff's and Cross-Plaintiffs' claims are barred by res judicata. As noted above, the Wayne County Circuit Court granted Defendants' motion for summary disposition "with prejudice" on Cross-Plaintiffs' complaint in the state court action. Defendants argue that the dismissal of Cross Plaintiffs' claims in the Wayne County lawsuit is controlling in the present suit.

"The doctrine of res judicata is employed to prevent multiple suits litigating the same cause of action. The doctrine bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first. Sewell v. Clean Cut Mgmt., Inc., 463 Mich. 569, 575 (2001). [The Michigan Supreme Court] has taken a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not. Dart v. Dart, 460 Mich. 573, 586 (1999)." Washington v. Sinai Hosp. of Greater Detroit, 478 Mich. 412, 418 (2007).

In response, Plaintiff and Cross-Plaintiffs argue that res judicata has no application to this matter because there has only been one suit filed, and the Wayne County Circuit Court ruling ("Wayne County ruling") was a prior decision in the same case, rather than a separate suit. Further, Plaintiff argues that her claims against Crown Corr and Hunt have never been decided on the merits, as her claims are based on negligent repairs performed between 2002 and 2005 that failed to prevent a hazardous condition from being created around the area of Plaintiff's fall. Plaintiff argues that the Wayne Count ruling regarded application of the statue of repose to a contractor's improvement to real property, while the instant claims relate to repairs to real property that do not implicate the statue of repose.

Further, Plaintiff and Cross-Plaintiffs assert that res judicata has no application to this matter because there has been only one suit filed, namely Plaintiff's suit filed in December 2008 in Wayne County Circuit Court ("2008 Suit"). Upon Plaintiff's filing of the 2008 Suit, Defendants Detroit Metro and Northwest filed a third-party claim against Crown Corr and Hunt, which was subsequently dismissed with prejudice by the state court. After the dismissal of the third-party claim, the Wayne County court allowed Detroit Metro and Northwest to file notices of non-party liability and then allowed Plaintiff to file an Amended Complaint to name Crown Corr and Hunt as defendants. Plaintiff and Cross-Plaintiffs assert that this procedural history demonstrates that the instant suit is a continuation of the Wayne County Suit, rather than a new suit to which res judicata may be applied.

The Court finds the res judicata argument non-dispositive, as it holds that it must give full faith and credit to Judge Baxter's September 10, 2009 Order, regardless of whether the instant suit is a new suit or a continuation of a prior suit. Pursuant to 28 U.S.C. § 1738, federal

courts are required to give judgments of state courts the same preclusive effect as they are entitled to under the laws of the state rendering the decision. <u>Executive Arts Studio, Inc. v. City of Grand Rapids</u>, 391 F.3d 783, 795 (6th Cir. 2004). Section 1738 directs that "judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States. . . as they have by law or usage in the courts of such State. . . from which they are taken." Accordingly, Judge Baxter's order with prejudice dismissing Northwest Airline's and Detroit Metro's claims against Hunt and Crown Corr is controlling in this forum.

The cross-claims in this matter are identical to the claims set forth in the third-party complaint ruled upon and dismissed by Judge Baxter. Accordingly, as Judge Baxter determined that those claims warranted summary dismissal, so must this Court. Summary judgment is granted on the cross-claims of Northwest and Detroit Metro against Crown Corr and Hunt.

Plaintiff, in response to Defendants' motion, argues that her claim against Defendants has never been decided on the merits. She argues that her claim is premised on an argument that Defendants conducted negligent repairs that failed to prevent a hazardous condition from being in the location of Plaintiff's fall. Plaintiff further argues that Defendants' prior dispositive motion was based on the statute of repose regarding a contractor's improvement to real property, and that as her claims do not relate to an improvement to real property, but rather to repairs made to the roof, Judge Baxter's prior ruling does not impact her claims.

The statute of repose states:

> Sec. 5839. (1) No person may maintain any action to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained as a result of such

> injury, against any state licensed architect or professional engineer performing or furnishing the design or supervision of construction of the improvement, or against any contractor making the improvement, more than 6 years after the time of occupancy of the completed improvement, use, or acceptance of the improvement, or 1 year after the defect is discovered or should have been discovered, provided that the defect constitutes the proximate cause of the injury or damage for which the action is brought and is the result of gross negligence on the part of the contractor or licensed architect or professional engineer. However, no such action shall be maintained more than 10 years after the time of occupancy of the completed improvement, use, or acceptance of the improvement.

M.C.L. 600.5839

There is no dispute that the new roof on the terminal constitutes an improvement to real property, as the term "improvement" is used in the statute of repose. Plaintiff, however, argues that the subsequent work on the roof, done in response to the leaks, do not relate to the improvement, but rather constitute repairs to the roof, which are not covered by the statute of repose. As noted above, Midfield Terminal opened in February 2002 and, according to Plaintiff, Work Orders and Incident Warranty Reports regarding roof leaks were made on May 12, 2002, February 20, 2003, February 3, 2004, March 11, 2004 and November 15, 2005. Further, as detailed above, Plaintiff's response brief argues that there is documentary evidence that reports of the leaks persisted throughout the years, including on dates when there was not a Work Order or Incident Warranty Report generated. Pltf. Resp. p. 5-9.

"The purpose of Michigan's statute of repose is to shield architects, engineers, and contractors from stale claims and to relieve them of open-ended liability for defects in workmanship." Pedzsu v. Beazer East, Inc., et al., 219 Mich. App. 405, 410 (1996), *citing* Ali v. Detroit, 218 Mich. App. 581, 587-588 (1996). The statute applies to actions for damages "arising out of the defective and unsafe condition of an improvement to real property." Id., *quoting* Adair v. Koppers Co., Inc., 741 F.2d 111, 112 (6th Cir. 1984).

It is apparent to the Court that the leaks in the roof constitute defects in workmanship, and that the continued efforts to seal the leaks were a continuation of the work on the improvement to real property, namely the roof. According to Plaintiff's response brief, "since opening for use, there has been repeated and ongoing leaks in the area of Plaintiff's fall," and the leaks apparently never fully subsided. Pltf. Resp. p. 3.

As the reported leaks, and any work done to seal the leaks, related to the improvement to real property, and constituted a continuation of such improvement, the Court finds that application of the statute of repose, as applied by Judge Baxter, is appropriate. Therefore, Crown Corr's and Hunt's summary judgment motion is granted.

## VI. Order

Accordingly,

IT IS ORDERED that Defendants' Motion for Summary Judgment is GRANTED.


Dated: May 18, 2011                       _s/Bernard A. Friedman_____
       Detroit, Michigan                  BERNARD A. FRIEDMAN
                                          UNITED STATES DISTRICT JUDGE